PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LAWRENCE F. GLASER, individually
and on behalf of Kimberly, Erin,
Hannah and Benjamin Glaser;
MAUREEN GLASER, individually and
on behalf of Kimberly, Erin,
Hannah and Benjamin Glaser,
                    *Plaintiffs-Appellants,*

v.

ENZO BIOCHEM, INCORPORATED;                    No. 05-1920
HEIMAN GROSS; BARRY WEINER;
ELAZAR RABBANI; SHAHRAM RABBANI;
JOHN DELUCCA; DEAN ENGELHARDT,
                    *Defendants-Appellees,*

                    and

RICHARD KEATING; DOUG YATES;
JOHN DOE, 1-50,
                    *Defendants.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-02-1242)

Argued: May 25, 2006

Decided: September 21, 2006

Before WILKINS, Chief Judge, GREGORY, Circuit Judge, and
Joseph F. ANDERSON, Jr., Chief United States District Judge
for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Anderson wrote the opinion, in which Chief Judge Wilkins and Judge Gregory joined.

---

**COUNSEL**

**ARGUED:** Michael Jay Rovell, Chicago, Illinois, for Appellants. Robert Richardson Vieth, COOLEY & GODWARD, L.L.P., Reston, Virginia, for Appellees. **ON BRIEF:** K. Stewart Evans, Jr., William J. Bethune, PEPPER HAMILTON, L.L.P., Washington, D.C., for Appellee Heiman Gross; Donald H. Chase, MORRISON COHEN, L.L.P., New York, New York, for Appellees Enzo Biochem, Incorporated, Barry Weiner, Elazar Rabbani, Shahram Rabbani, John DeLucca, and Dean Engelhardt.

---

**OPINION**

ANDERSON, Chief District Judge:

The plaintiffs, Lawrence F. Glaser and his family, appeal the dismissal of their claims for common law fraud against Enzo Biochem, Incorporated ("Enzo") and individual defendants Heiman Gross, Barry Weiner, Elazar Rabbani, Shahram Rabbani, John DeLucca, and Dean Engelhardt. After this Court remanded a portion of the case in an earlier appeal, *Glaser v. Enzo*, No. 03-2188, 2005 WL 647745 (4th Cir. March 21, 2005), the district court granted the motion of defendants Elazar Rabbani, Shahram Rabbani, John DeLucca, and Heiman Gross ("Moving Defendants") to dismiss the common law fraud claims against them for lack of an actionable statement, as well as the motion to dismiss the common law fraud claims against the remaining defendants because of the decision of the United States Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), which issued subsequent to this Court's remand. The district court also denied plaintiffs' motion to amend their amended complaint. For the reasons that follow, we affirm.

I.

As recounted in the earlier appeal, Enzo is a publicly traded bio-technology company engaged in research and development of treat-

ments to combat the human immunodeficiency virus ("HIV") and other diseases. From 1994 to 2000, Glaser purchased more than one million shares of Enzo stock. According to the plaintiffs' Amended Complaint, Enzo, through press releases and statements made by its officers, exaggerated the preliminary success of its HIV and Hepatitis B therapies, including pre-clinical and clinical trials; its stealth vector; its patent estate; and other commercial arrangements. Plaintiffs claim that the purpose of the alleged fraud and conspiracy among the defendants was to enable the defendants to dump their shares on an unsuspecting marketplace and obtain prices that, had the true facts been known, would have been substantially lower. Plaintiffs claim that defendants' conduct caused plaintiffs' entire position in Enzo—which at one point was in excess of $100 million—to liquidate and thus forced plaintiffs into bankruptcy.

In the first appeal, plaintiffs challenged, inter alia, the district court's dismissal of their common law fraud claim. In reversing that portion of the district court's ruling, we found that plaintiffs had sufficiently alleged common law fraud under Virginia law as to eight misrepresentations made by the following defendants: two statements made by defendant Engelhardt at the January 12, 2000 shareholders' meeting, three statements made by defendant Weiner at the January 12 meeting, and three statements made by defendant Enzo in various press releases issued after the January 12 meeting.

On remand, defendants moved to dismiss the remaining common law fraud claim on two grounds: first, that this Court had effectively dismissed the conspiracy claims against the Moving Defendants as they did not make any of the eight actionable statements left standing by this Court's prior opinion, and, second, that plaintiffs failed to adequately allege loss causation as *Dura* required. Plaintiffs sought to amend their Amended Complaint to add allegations to their common law fraud claim to satisfy the *Dura* pleading requirements of loss causation. The district court granted defendants' motion to dismiss and denied plaintiffs' motion to amend. The plaintiffs now appeal each of these adverse rulings.

## II.  Discussion

### A.  Standard of Review

This Court reviews *de novo* a decision dismissing a complaint for failure to state a claim. *Chisolm v. TranSouth Financial Corp.*, 95 F.3d 331, 334 (4th Cir. 1996). A complaint should not be dismissed unless there is no set of facts on which relief can be granted, with all well-pled allegations of the complaint viewed as true and drawing all reasonable inferences in favor of the plaintiff. *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The Court reviews a denial of leave to amend the complaint for an abuse of discretion. *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001).

### B.  Dismissal of Claims Against Moving Defendants

The district court dismissed the plaintiffs' common law fraud claim against the individual defendants. Under Virginia law, a plaintiff seeking to recover for fraud must allege: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999) (applying Virginia law); *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1998).

The district court dismissed the complaint against the Moving Defendants because they did not make any of the statements this Court found in its prior opinion to be actionable. The plaintiffs argue the district court erred in dismissing the Moving Defendants, contending these defendants conspired with the people who did make the false statements. Accordingly, the plaintiffs assert the dismissal of the Moving Defendants was effectively reversed when this Court reversed the district court's dismissal and remanded plaintiffs' common law fraud claim. We disagree.

Our review of the record reveals that Moving Defendants Elazar and Shahram Rabbani, John DeLucca, and Heiman Gross made none

of the statements that this Court upheld as bases for plaintiffs' common law fraud claims. Instead, those statements were made by defendants Engelhardt, Weiner, and in Enzo press releases. Furthermore, this Court previously upheld the district court's dismissal of plaintiffs' conspiracy to commit securities fraud claims and found no abuse of discretion in the district court's decision to deny leave to amend to plead conspiracy to commit common law fraud. Therefore, the district court properly dismissed the common law fraud claims against the Moving Defendants.

### C.   Dismissal of Common Law Fraud Claim Under *Dura*

Plaintiffs next challenge the dismissal of their common law fraud claim for failure to satisfy the *Dura* pleading requirements of loss causation. First, the plaintiffs contend that this Court had already specifically held that their common law fraud complaint was legally sufficient and there was no basis for the district court to ignore that ruling. Second, the plaintiffs argue that *Dura* did not change the law considered by this Court, but merely rejected a holding in the Ninth Circuit. Finally, plaintiffs assert they do not rely on the theory of loss causation that was rejected in *Dura*. We find plaintiffs' arguments unpersuasive. Instead, we agree with the district court that *Dura* requires plaintiffs to plead loss causation by alleging that the stock price fell after the truth of a misrepresentation about the stocks was revealed, and the plaintiffs in this case did not so plead. *See* 544 U.S. at 342.

This Court has not previously addressed the adequacy of plaintiffs' loss causation allegations, most significantly because it was not the basis of the district court's original dismissal of the common law fraud claim. Subsequent to this Court's opinion and mandate remanding the action to the district court, the Supreme Court issued its decision in *Dura* which addressed analogous fraud allegations and specifically rejected the inflated purchase price approach to causation relied upon by plaintiffs in their pleadings. With the benefit of *Dura*, the district court determined that plaintiffs' pleadings of common law fraud failed as a matter of law because plaintiffs were unable to link their losses to the alleged misrepresentations by showing that the Enzo stock price dropped upon revelation of the true state of facts.

The plaintiffs in *Dura* were purchasers of stock in a pharmaceutical company which allegedly made false statements about expected future Food and Drug Administration approval of a new asthmatic spray device resulting in an artificially-inflated stock price. The *Dura* plaintiffs alleged that they purchased the stock at inflated prices and that they suffered resulting damages. *Id.* at 339.

In its analysis, the *Dura* court analogized the federal securities law case there to common-law tort actions for deceit and misrepresentation. *Id.* at 341. The Supreme Court rejected the Ninth Circuit's holding that loss causation is established by showing that "the price on the date of purchase was inflated because of the misrepresentation," *id.* at 342, and concluded that to properly plead loss causation in a fraud claim, a plaintiff must allege that the price fell after the truth came to light about a misrepresentation, and that the plaintiff suffered damages as a result, and even this may not be sufficient to show actual loss:

> For one thing, as a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value. Moreover, the logical link between the inflated share purchase price and any later economic loss is not invariably strong. Shares are normally purchased with an eye toward a later sale. *But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.* If the purchaser sells later after the truth makes its way into the market place, an initially inflated purchase price *might* mean a later loss. But that is far from inevitably so. When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price. . . . Other things being equal, the longer the time between purchase and sale, the more likely that this is so, *i.e.*, the more likely that other factors caused the loss.

*Id.* at 342-343 (emphasis added).

The loss causation principle endorsed by *Dura* can be illustrated by a simple hypothetical: Assume an investor purchased 100 shares of Enzo for $12 per share on January 12, 2000, after the alleged misrepresentations were made. If the market had known the truth about the science, instead of trading for $12 per share, the stock would have traded for only $1 per share.

Plaintiffs in this case would have stopped the analysis there, contending that, on the very day of purchase, the investor has suffered a loss of $1,100 — the difference between the price paid ($1,200) and the price that *would have been paid* ($100) had the true facts been known. This analysis ignores the fact that the true facts are not yet known and the hypothetical investor has not yet suffered a loss.*

If the stock later drops, as a result of normal market fluctuations, to $6 per share (again assuming the fraud has not yet been disclosed), then the investor owns stock worth only one-half of what was paid for it. If he sells at this point, he has lost $600 of his initial $1,200 investment, to be sure, but this loss was not *caused by* the fraudulent conduct, because, under the hypothetical, the market is still unaware of the misrepresentations.

It is only after the fraudulent conduct is disclosed to the investing public, followed by a drop in the value of the stock, that the hypothetical investor has suffered a "loss" that is actionable after the Supreme Court's decision in *Dura*. In other words, so long as the fraud is undisclosed, normal fluctuations in price attendant to any market may have a direct effect on the value of the investor's portfolio, but cannot be said to be a "loss" that is actionable under the federal securities laws, or as here, the common law of Virginia.

In *Dura*, the Supreme Court swept away precedent holding that it is enough to show causation if the alleged misrepresentation "touches

---

*If one month later, with the fraud still undisclosed to the market, the Enzo stock climbs to $16 per share, then the hypothetical investor now owns stock worth $400 more than was paid for it, yet has still suffered a $1,100 "loss" under plaintiffs' theory of loss causation.

upon" the economic loss. *Id.* at 343. "To 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires." *Id.* (emphasis in original). A higher purchase price may lead to a "future loss" and may be a "necessary condition of any such loss," the Court said, but it does not by itself show loss causation. *Id.*

*Dura* makes clear that plaintiffs' damages theory — one that relies on the inflated purchase price theory of causation — cannot be sustained. While plaintiffs repeat throughout their complaint that they were "fraudulently induced to invest in and retain common shares of Enzo at artificially inflated prices" (A. 271, 272, 277, 287, and 294; Complaint at ¶¶ 64, 70, 84, 114 and 135), they make no effort to link the drop in stock price to any revelation of the true facts behind any alleged misrepresentations by defendants, let alone to one of the eight actionable alleged misrepresentations remaining after this Court's prior opinion. Plaintiffs must have pled an actual causal connection between the alleged misrepresentations and a subsequent decline in Enzo's stock. Plaintiffs' failure to do so is fatal to their common law fraud claim.

In fact, plaintiffs' own admissions establish that any decline they experienced is unrelated to the defendants' alleged misrepresentations. Plaintiffs concede in their complaint that the alleged truth about Enzo's science was not publicly revealed until a Recombinant Advisory Committee ("RAC") meeting on March 8, 2001. (A. at 286, 289; Complaint, ¶ 109 and 119). By that time, however, plaintiffs had already sold all their Enzo shares and filed for bankruptcy protection. (A. at 259; Complaint, ¶ 12; A.44). Consequently, any declines in the price of Enzo stock that occurred before that date must have been the result of market factors or other factors, not the revelation of the alleged truth relating to any of the eight alleged misrepresentations by the defendants. Apart from the reference to the RAC meeting, plaintiffs do not provide any indication as to when or how the truth became known to them with respect to any of the eight alleged misrepresentations this Court identified.

Finally, the Court finds unpersuasive plaintiffs' attempts to distinguish *Dura* from the instant case. Although plaintiffs correctly note that *Dura* is a class action and did not decide Virginia law or any common law fraud claim, the Supreme Court in *Dura* extensively discussed the requirements of loss causation at common law and specifi-

cally articulated the causation pleading requirements for a fraud claim. The Court finds nothing in the *Dura* court's analysis of the common law loss causation requirements that justifies a different standard for plaintiffs' common law fraud claim under Virginia law.

In light of the intervening precedent provided by *Dura*, the Court finds that plaintiffs do not properly allege loss causation, and that the district court did not err in dismissing plaintiffs' common law fraud claims.

### D.    Denial of Motion to Amend Complaint

Next, the plaintiffs argue that they should have been granted leave to amend their Amended Complaint. Although leave to amend should "be freely given when justice so requires," Fed. R. Civ. P. 15(a), the district court may deny leave to amend for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs had an unprecedented thirteen months of unilateral pre-complaint discovery under Bankruptcy Rule 2004 and had already set forth four iterations of their complaint. We conclude that the district court did not abuse its discretion in ruling that the plaintiffs' many opportunities to present their claim warranted denial of the motion to amend.

### E.    Abandonment of Motion for Reconsideration

Finally, plaintiffs indicated in their Notice of Appeal that they were appealing the denial of their motion for reconsideration pursuant to Rule 59(e). However, because plaintiffs fail to address their motion for reconsideration in their appellate brief, they are deemed to have abandoned it.

### III.

The district court properly dismissed the plaintiffs' common law fraud claim and did not err in denying the plaintiffs leave to amend their complaint.

*AFFIRMED*