**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-2214**

DR. ANILA DAULATZAI,

Plaintiff - Appellant,

v.

STATE OF MARYLAND; SOUTHWEST AIRLINES CO.,

Defendants - Appellees.

**No. 22-1816**

DR. ANILA DAULATZAI,

Plaintiff - Appellant,

v.

STATE OF MARYLAND; SOUTHWEST AIRLINES CO.,

Defendants - Appellees.

Appeals from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, Chief District Judge.  (1:21-cv-00590-JKB)

Argued:  October 24, 2023                    Decided:  March 20, 2024

Before NIEMEYER, GREGORY, and HARRIS, Circuit Judges.

_____

Affirmed by published opinion.   Judge Niemeyer wrote the opinion, in which Judge Gregory and Judge Harris joined.

_____

Tonya Baña, TONYA BAÑA, LLC, Baltimore, Maryland, for Appellant.  Jonathan Michael Stern, VICTOR RANE, PLC, Washington, D.C., for Appellees.

NIEMEYER, Circuit Judge:

The captain of a Southwest Airlines flight scheduled to depart from Baltimore for Los Angeles decided to remove Anila Daulatzai from the plane after receiving information that Daulatzai was allergic to dogs, that two dogs were on the flight, and that flight attendants were unwilling to fly in the circumstances. When Daulatzai insisted on remaining in her seat despite the captain's decision, Maryland Transportation Authority police officers physically removed her from the plane and then charged her with disorderly conduct and resisting arrest, among other offenses. And with Daulatzai's consent, a state judge found her guilty of disorderly conduct on an agreed statement of facts and placed her on six months' unsupervised "probation before judgment" on the condition that she pay a fine and costs, all in accord with Maryland Code Criminal Procedure Article § 6-220(b) (2017).

Daulatzai commenced this action against Southwest Airlines Co. and the State of Maryland, alleging various grounds over three different versions of her complaint to challenge both her removal from the plane and her arrest, and the defendants filed motions to dismiss in response to each version. The district court dismissed the third version of Daulatzai's complaint for failure to state a plausible claim upon which relief could be granted and entered a final judgment. Daulatzai appealed that judgment. Thereafter, while her appeal was pending, she also filed a motion in the district court under Federal Rule of Civil Procedure 60(b), seeking to file a fourth version of her complaint with the district court. The court, however, denied her request, finding that her efforts were pursued in bad faith, that her repeated failures to cure defects in her pleadings had been prejudicial to the

3

defendants, and that the fourth complaint would, in any event, be futile. Daulatzai appealed that ruling as well.

For the reasons given herein, we affirm the district court in both appeals.

I

On September 26, 2017, as Anila Daulatzai was preparing to board a Southwest Airlines flight from Baltimore to Los Angeles, she noticed several dogs in the waiting area. Because she was allergic to dogs, she asked the gate agent how many dogs would be on the plane, and the agent responded that there would only be one and that it would be with a passenger seated near the front of the plane. Accordingly, when Daulatzai boarded the plane, she took a seat near the rear.

Shortly thereafter, a flight attendant approached Daulatzai to ask if she was the passenger who had the dog allergy, and Daulatzai responded that she did have a dog allergy but that "it [was] not a life-threatening one." When the attendant then notified her that there would be a second dog on board, Daulatzai confirmed that that would "not [be] an issue for her." A few moments later, a second flight attendant told Daulatzai that there was an EpiPen on board if she needed one, and Daulatzai responded that her allergy "was not that severe" and that she had never needed an EpiPen before. Finally, when another airline attendant subsequently asked her about the allergy, Daulatzai reiterated that it was "not life-threatening."

Shortly thereafter, the plane's captain, Darren Medeiros, was told by flight attendants that they would not service the trip if Daulatzai remained on board. Based on

4

the information that he received, the captain, accompanied by a Maryland Transportation Authority ("MTA") police officer, went to Daulatzai and told her that he did "not feel comfortable with [her] on this plane" and asked her to leave. Despite Daulatzai's explanation that she needed to be in Los Angeles the next morning, that her allergy would not be an issue because of where she was seated, and that her allergy was "not life-threatening," the captain refused to reconsider his decision. When Daulatzai did not accede to his request, the captain summoned additional MTA police officers and requested that they remove Daulatzai from the plane. As Daulatzai attempted to remain seated, two officers began lifting her to remove her from the seat. While they were doing so, she said that she was pregnant and would walk off the plane by herself. Doubting her, the officers continued to pull her out of the seat, ripping some of her clothing in the process, and dragged her from the plane.

Following her removal from the plane, the officers placed Daulatzai in a holding area in the terminal for several hours. During that period, as she alleged, she heard one of the officers state that "Mexican women always lie about being pregnant." Daulatzai, who is of Pakistani descent, also alleged that the officers "began 'betting' on [her] race and/or ethnicity" and that "[o]ne officer exclaimed, 'Ha! I told you she was a towel head!'"

Daulatzai was charged in five counts with resisting arrest, disorderly conduct, disturbing the peace, obstruction, and failure to obey a lawful order. Some six months later, following a settlement conference, Daulatzai pleaded "not guilty" to the disorderly conduct charge but agreed to a statement of facts on which the state court judge found her guilty of the offense. With Daulatzai's written consent and pursuant to Maryland Code

5

Criminal Procedure Article § 6-220, the court "stay[ed] the entering of judgment, deferr[ed] further proceedings, and place[d] [Daulatzai] on [unsupervised] probation" for six months, subject to the condition that she pay a fine of $342.50 plus costs and fees. Md. Code Ann., Crim. Proc. § 6-220(b) (2017). The remaining four counts were then *nolle prossed*, and Daulatzai paid the fine, costs, and fees.

Almost three years after the incident, on September 22, 2020, Daulatzai commenced this action in the Circuit Court for Anne Arundel County, Maryland, against Southwest Airlines and the State of Maryland for common law battery and negligence. She alleged that she had been removed from the Southwest flight "on the mistaken belief [that] she had allergies which could be deadly" and that state police officers had used unnecessary force when removing her from the plane. Maryland and Southwest filed motions in state court to dismiss the complaint.

After retaining a new lawyer, Daulatzai filed an amended complaint in February 2021. This complaint added a claim alleging that Daulatzai's removal from the flight had been racially motivated, in violation of federal law. Based on the addition of federal claims, the defendants removed the action to federal court, where they again filed motions to dismiss.

Shortly thereafter, Daulatzai filed a motion for leave to file a Second Amended Complaint — now her third complaint — explaining that her original complaint had been prepared by her former attorney "without [her] participation" and that "while the First Amended Complaint . . . clarified the nature of [her] claims," it had "only included a bare bones recitation of the factual allegations giving rise to [her] additional claims."

6

Accordingly, she asserted that her Second Amended Complaint was "necessary in order to set forth a better statement of those claims." The district court granted her motion, and she filed the complaint. The Second Amended Complaint included six counts: (1) a count against Southwest for racial discrimination in contracting under 42 U.S.C. § 1981; (2) a malicious prosecution count against both Southwest and Maryland; (3) a count for false arrest/false imprisonment against Maryland; (4) a battery count against Maryland; (5) a count stating federal and state constitutional claims against Maryland; and (6) a negligence count against both Southwest and Maryland. Southwest and Maryland again, for the third time, filed motions to dismiss for failure to state a claim. While Daulatzai then filed a motion for a short extension of time to respond to the defendants' motions — which the district court granted — she never filed a response to the motions nor sought an additional extension of time to do so.

After a month had passed, the district court entered a memorandum opinion and order on August 26, 2021, granting the defendants' unopposed motions to dismiss. *See Daulatzai v. Maryland*, 556 F. Supp. 3d 536 (D. Md. 2021). In its opinion, the court noted, with respect to Daulatzai's § 1981 count against Southwest, that a federal statute provided that "an air carrier . . . may refuse to transport a passenger . . . the carrier decides is, or might be, inimical to safety." *Id*. at 541 (quoting 49 U.S.C. § 44902(b)). The court explained that, based on this provision, a number of courts had concluded that "to succeed on a federal discrimination claim against an air carrier for a [pilot's] decision to remove a passenger for safety concerns," the plaintiff had to establish that the pilot's decision was "arbitrary and capricious" in light of "the facts known to the pilot at the time." *Id*. (cleaned

7

up). The court concluded that the facts alleged by Daulatzai in her Second Amended Complaint made clear that the pilot's decision to remove her was not "so unreasonable as to be arbitrary and capricious," given that her allegations indicated that "multiple Southwest flight personnel" had told the captain that Daulatzai "had a serious allergy" and that they had expressed "significant concerns" about her flying while dogs were also on board. *Id*. at 541–42. Next, the district court concluded that Daulatzai's state-law negligence claim against Southwest was "squarely preempted" by a provision of the Airline Deregulation Act, "which prohibits states from 'enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier.'" *Id*. at 542 (quoting 49 U.S.C. § 41713(b)(1)). And with respect to Daulatzai's malicious prosecution claim against Southwest, the court held that that claim "plainly fail[ed]" because "the prosecution did not terminate in her favor," given that she had received "probation before judgment" for the disorderly conduct charge, which, under Maryland law, required the judge to find her guilty of the offense. *Id*. at 542–43. As for Daulatzai's counts against Maryland, the district court construed her complaint as alleging a Fourth Amendment claim, brought pursuant to 42 U.S.C. § 1983, that she had been arrested without probable cause. The court reasoned, however, that a finding that the arresting officers lacked probable cause for her arrest "would necessarily imply that the probation before judgment entered against her was invalid" and therefore that her claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny. *Id*. at 543. Finally, the court concluded that all of Daulatzai's state law claims against Maryland were subject to dismissal because, "[d]espite Maryland twice raising" the issue, Daulatzai had failed to

8

"plead compliance" with the procedural requirements of the Maryland Tort Claims Act. *Id*. at 544. Accordingly, the court entered a final judgment dismissing Daulatzai's Second Amended Complaint and directed the clerk of court to "close the case."

Daulatzai filed a timely appeal from the district court's judgment, which is the first appeal before us.

More than three months after the August 26, 2021 judgment, Daulatzai also filed a motion in the district court for relief from the court's final judgment, pursuant to Federal Rule of Civil Procedure 60(b). In the motion, Daulatzai requested that the court vacate its dismissal of her malicious prosecution and related Fourth Amendment claims on the ground that the defendants had "misrepresented" that she was found guilty of the disorderly conduct charge, whereas she in fact had "received probation before judgment on [that] charge without the state judge finding her guilty or entering a judgment of guilt against her." In addition, Daulatzai asked the court to modify the judgment to dismiss her remaining claims without prejudice and "expressly grant her leave pursuant to [Federal Rule of Civil Procedure] 15(a)(2) to file" another amended complaint. She attached to the motion a copy of her proposed Third Amended Complaint — which would be her fourth complaint — and asserted that "[t]he proposed amendment would not be futile because it [would] cure[] all of the defects the [district court had] noted in dismissing [her] claims and all of the other alleged deficiencies Defendants [had] pointed out in the motions to dismiss."

By order entered December 6, 2021, the district court denied Daulatzai's Rule 60(b) motion in part. In its memorandum opinion, it concluded that Daulatzai's request that the

9

court reconsider the dismissal of her malicious-prosecution-type claims was "frivolous" because, under Maryland law, a "probation before judgment" is permitted only "'[w]hen a defendant pleads guilty or nolo contendere *or is found guilty of a crime*.'" (Emphasis added) (quoting Md. Code Ann., Crim. Proc. § 6-220(b)(1) (2017)). With respect to the remainder of her Rule 60(b) motion, the court concluded, in light of the pending appeal, that it lacked jurisdiction to consider whether it should reopen the case to permit Daulatzai to file a Third Amended Complaint, as that issue was not "frivolous" and therefore could not be resolved "'without disturbing appellate jurisdiction over the underlying judgment.'" (Quoting *Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 891 (4th Cir. 1999)). In an indicative ruling issued pursuant to Federal Rule of Civil Procedure 62.1, however, the court observed that it was "doubtful" that the proposed Third Amended Complaint "allege[d] sufficiently distinct facts to alter the viability of [Daulatzai's] claims," although it had not yet reached a "firm conclusion" on that issue.

After we granted Daulatzai's motion for a limited remand in her pending appeal to allow the district court to address the unresolved Rule 60(b) issue, the district court addressed the open question and denied Daulatzai's request to file a Third Amended Complaint. In a thorough 40-page memorandum opinion dated June 8, 2022, the court explained that it was relying on several independent grounds to do so.

First, the court noted that the judgment had to be vacated pursuant to Rule 60(b) before it could consider Daulatzai's motion to amend under Rule 15(a). *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). Yet, it found that Daulatzai had "provided no reason for [it] to find that the Rule 60(b) standard [was] satisfied in this case."

10

*Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 261 (D. Md. 2022). The court did not, however, rule that Daulatzai's failure in this regard was dispositive because we had noted in a prior case that the Rule 60(b) standard collapsed into the Rule 15(a) standard. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470–71 (4th Cir. 2011). In light of that, the court considered Daulatzai's motion under the Rule 15(a) standard, as it would apply to any pre-judgment motion to amend.

Applying the Rule 15(a) standard, the district court concluded that Daulatzai's request for leave to file a Third Amended Complaint should be denied for both procedural and substantive reasons. Procedurally, the court observed that the "significant and unexplained" three-month delay between when the court dismissed the Second Amended Complaint and when Daulatzai sought leave to amend her complaint yet again could "only be described as undue." *Daulatzai*, 606 F. Supp. 3d at 262. The court also noted "the manner in which [Daulatzai's] pleadings ha[d] developed in this litigation," including that her "prior amendments ha[d] failed to cure specific legal deficiencies that Defendants ha[d] long contended warrant[ed] dismissal." *Id*. Instead, her "[a]mendments [had] each overhauled significant portions of [her] factual" allegations with no explanation as to why the "factual additions . . . could not have been included in an earlier pleading." *Id*.

"More troublingly," the district court found, was that Daulatzai's proposed Third Amended Complaint "suggest[ed] two forms of bad-faith pleading" — first, by alleging "facts that show [that] some of the flaws that have persisted throughout her pleadings are, in fact, incurable," such as by making clear that she did not provide timely notice of many of her tort claims to Maryland as required by the Maryland Tort Claim Act, and second, by

11

newly alleging facts in her Third Amended Complaint that were "inconsistent with facts alleged in prior pleadings." *Daulatzai*, 606 F. Supp. 3d at 263. As the primary example of this, the district court noted that "in her prior pleadings, [Daulatzai] alleged that she [had] repeatedly stressed to flight attendants that her dog allergy was '*not life threatening*.'" *Id*. at 263–64 (emphasis added). But after the district court dismissed her § 1981 claim against Southwest on the ground that her allegations nonetheless indicated that "multiple Southwest flight personnel believed she had a *serious allergy*," she "removed all mention of [her] introducing the phrase 'life-threatening' into her dialogue with various Southwest employees, instead alleging that she [had] repeatedly told them" that her allergy was "'not . . . serious'" — a change that the district court concluded "reflect[ed] a contradiction, rather than a clarification, of [her] previous allegations." *Id*. at 264 (emphasis added).

More broadly, the court noted that, like her prior pleadings, Daulatzai's Third Amended Complaint would "significantly revise[] her factual and legal claims." *Daulatzai*, 606 F. Supp. 3d at 265. It reasoned that "[t]his repeated shifting of [her] allegations, which now border[ed] on the disingenuous," indicated that "her repeated amendments ha[d] not been a good-faith effort to crystallize and pursue viable claims" but instead amounted to "gamesmanship." *Id*. And, the court concluded, such "gamesmanship [was] not only problematic in the abstract" but "ha[d] also caused significant prejudice to Defendants," emphasizing their representation that they had spent "'*substantially more than $100,000*'" in litigation costs. *Id*. Indeed, the court "emphasize[d] that the prejudice

12

imposed on Defendants [was] sufficient to deny leave to amend even if [Daulatzai's] amendments had been sought in good faith." *Id*. at 266.

Apart from these findings regarding bad faith and prejudice, the district court also concluded that allowing her Third Amended Complaint would be futile, as "the Third Amended Complaint fail[ed] to state any plausible claims." *Daulatzai*, 606 F. Supp. 3d at 266. To start, the court noted that Daulatzai had, "[f]or the first time," attempted to allege claims against "five officers who were allegedly involved in removing her from the flight." *Id.* But it concluded that those claims did not "relate back to her earlier pleadings" under Federal Rule of Civil Procedure 15(c)(1)(C) and therefore were untimely. *Id*. at 269. The court then concluded that all of the proposed Third Amended Complaint's claims against Southwest and Maryland continued to fail as a matter of law.

As the district court summarized, it denied Daulatzai's motion for leave to file another amended complaint because "(1) [her] repeated amendments [had] been made in bad faith; (2) [her] repeated failure to cure defects in her pleadings [had] been prejudicial to Defendants; and (3) the Third Amended Complaint [would be] futile." *Daulatzai*, 606 F. Supp. 3d at 279.

From the court's order denying Daulatzai's Rule 60(b) motion, Daulatzai filed a second appeal, which we have consolidated with her first appeal taken from the district court's August 26, 2021 judgment.

13

II

In her first appeal, taken from the district court's order dismissing her Second Amended Complaint under Rule 12(b)(6), Daulatzai contends simply that the district court "erred" based on "a misapprehension of [her] allegations and the record in the case." But beyond that simple conclusory assertion, she has failed to present *any* arguments in specific response to the district court's memorandum opinion. Instead, she focuses on her argument that the claims she alleged in her Third Amended Complaint were adequately pleaded, such that it would not have been futile to allow another amendment. Moreover, Daulatzai's failure to present argument on this appeal is fatally aggravated by the fact that Daulatzai presented *no* arguments to the district court as to why the claims in her Second Amended Complaint should survive the defendants' motions to dismiss and thereby failed to preserve any issue she might have had in response to them.

In these circumstances, we conclude that Daulatzai has waived her challenge to the district court's dismissal of her Second Amended Complaint under Rule 12(b)(6) by failing to preserve it below. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000) (noting "the general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts"); *see also In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014). Moreover, even if she had preserved her arguments, she has given us no reasons in her opening brief on appeal why the district court erred. *See Grayson O Co. v. Agadir Int'l, LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop its argument — even if its

14

brief takes a passing shot at the issue'" (cleaned up) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015))).

Accordingly, we affirm the district court's order dismissing Daulatzai's Second Amended Complaint.

### III

In her second appeal, Daulatzai challenges the district court's denial of her Rule 60(b) motion for relief from the final judgment dismissing her Second Amended Complaint. In her Rule 60(b) motion, she included a motion for leave under Rule 15(a)(2) to file a Third Amended Complaint.

At the outset, we must sort out the procedural course for addressing her appeal and the distinct standards required by Rules 60(b) and 15(a)(2), mindful that each rule "serves a procedural purpose that fits into the larger function of providing an orderly process to adjudicate actions." *Calvary Christian Ctr. v. City of Fredericksburg*, 710 F.3d 536, 540 (4th Cir. 2013).

The defendants filed motions to dismiss Daulatzai's Second Amended Complaint, and the district court granted them, entering a final judgment in their favor on August 26, 2021. More than three months after the entry of that judgment, Daulatzai filed a motion under Rule 60(b) for relief from the judgment and for leave to file a proposed Third Amended Complaint. In her motion, Daulatzai contended that the district court "should reconsider" its decision dismissing her complaint "to correct a clear error of law" with respect to its understanding of Daulatzai's prior adjudication of "probation before

15

judgment" on the disorderly conduct charge filed against her. She also requested that she be permitted to file a Third Amended Complaint to "cure[] all of the defects the Court noted in dismissing" her Second Amended Complaint.

It is well established, and indeed logical, that before the district court could consider her motion for leave to file an amended complaint, Daulatzai would have to succeed in vacating the final judgment that had been entered against her three months earlier. As we explained in *Laber v. Harvey*, a "district court may not grant [a] post-judgment motion [to amend] unless the judgment is vacated pursuant to Rule 59(e) or [Rule] 60(b)." 438 F.3d 404, 427 (4th Cir. 2006) (en banc); *see also Britt v. DeJoy*, 45 F.4th 790, 793 (4th Cir. 2022) (en banc) ("[A] plaintiff may only amend her complaint following a judgment if [she] file[s] a motion to reopen or to vacate the judgment under [Rule] 59(e) or [Rule] 60(b)").

Daulatzai apparently recognized this, as she stated in her motion that the district court should vacate the judgment under Rules 60(b)(1), (2), (3), and (6) "to correct a clear error of law" and to allow her to file the proposed Third Amended Complaint pursuant to Rule 15(a)(2). But despite that recitation, she provided the district court with no explanation of how Rules 60(b)(1), (2), (3), or (6) were satisfied, and the district court so observed. Rather, she passed over satisfying those requirements and proceeded to argue that both her Rule 60(b) motion and her Rule 15(a) motion should be resolved by applying the liberal standard for granting amendments — *i.e.*, that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2).

16

She now argues that under the liberal standard of Rule 15(a)(2), the district court was required to grant her leave to file her proposed Third Amended Complaint, regardless of what Rule 60(b) required, and that its failure to do so was an abuse of discretion. And for support of her argument that the Rule 15(a) standard also applies to resolve her Rule 60(b) motion, she relies on our decision in *Katyle v. Penn National Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011).

In *Katyle*, we were presented with the procedural situation where the plaintiffs, after judgment had been entered against them, filed a timely motion under Rule 59(e) in which they sought leave to file an amended complaint. We noted that in addressing a Rule 59(e) motion in that circumstance, a court need not apply a legal standard different from the standard for allowing a pre-judgment amendment, observing that "a court should evaluate a postjudgment motion to amend the complaint 'under the same legal standard as a similar motion filed before judgment was entered — for prejudice, bad faith, or futility.'" *Katyle*, 637 F.3d at 471 (quoting *Laber*, 438 F.3d at 427). That holding in *Katyle* was consistent with *Laber*, where we also considered a Rule 59(e) motion and held that "[a] conclusion that the district court abused its discretion in denying a motion to amend . . . is sufficient grounds on which to reverse the district court's denial of a Rule 59(e) motion." *Laber*, 438 F.3d at 428. Both *Laber* and *Katyle* were grounded on the reality that the standard for granting a Rule 59(e) motion is so broad and open ended that the court should apply the more specific standard of Rule 15(a) where prejudice, bad faith, or futility are brought to bear.

17

Yet in *Katyle*, we also inadvertently indicated that the same collapsing of standards that occurs when both Rule 59(e) and Rule 15(a) are invoked would also occur if Rule 60(b) were invoked to vacate the judgment. Specifically, we stated that while "a district court may not grant a post-judgment motion to amend the complaint unless the court first vacates its judgment pursuant to [Rule] 59(e) or [Rule] 60(b)[,] [t]o determine whether vacatur is warranted . . . *the court need not concern itself with either of those rules' legal standards*," thus referring to both Rule 59(e) *and* Rule 60(b). *Katyle*, 637 F.3d at 470–71 (emphasis added) (footnote omitted). While the first part of that statement was a correct quote from *Laber*, the inclusion of Rule 60(b) in the highlighted part of the statement, referring to both "rules' legal standards," was gratuitous because we only had before us a Rule 59(e) motion, not a Rule 60(b) motion. *See id*. at 470 n.4. And it was inadvertent because it was made in purported reliance on *Laber*, even though *Laber* did not similarly indicate that the Rule 60(b) standard could be disregarded. If we were to agree with Daulatzai that this *Katyle* statement were binding, we would be alone in the Nation in collapsing the Rule 60(b) standard with the standard for Rule 15(a). *Moore's Federal Practice* so notes, referring to our *Katyle* statement as "curious[]." 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.13 (3d ed. 2020). The treatise adds that we also provided no rationale for our inclusion of Rule 60(b) and had overlooked that Rule 60(b) is "designed to protect the finality of judgments." *Id*. Most importantly, however, the statement in *Katyle* failed, without explanation, to recognize the material differences between Rule 59(e) and Rule 60(b). Fortunately, it was dictum.

18

When an action has been dismissed with a final judgment, "there is no pending complaint to amend." *Calvary Christian*, 710 F.3d at 540. Thus, as we have repeatedly recognized, "a motion to amend filed *after* a judgment of dismissal has been entered cannot be considered until the judgment is vacated." *Id*. at 539 (emphasis added) (citing *Laber*, 438 F.3d at 427; *Katyle*, 637 F.3d at 470; *Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012)). And this may be accomplished either by the authority of Rule 59(e) or Rule 60(b). The difference between the two rules, however, is material, both in scope and purpose, and, by their own terms, different standards apply.

Rule 59(e) authorizes motions "to alter or amend a judgment," provided they are filed within 28 days of the judgment. This rule was promulgated to make clear that the district court, with broad discretion, could "rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982). The *White* Court explained that Rule 59(e) is generally invoked "only to support reconsideration of matters properly encompassed in a decision on the merits." *Id*. at 451. The standard for granting the motion is broad, as a court is authorized to reconsider its ruling on virtually any basis that it determines might have been an error or mistake in its judgment, although "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020). Moreover, the filing of a timely Rule 59(e) motion suspends the finality of the judgment, with the judgment's finality being restored only upon disposition of the motion. *See id*.; *see also* Fed. R. App. P. 4(a)(4)(A)(iv). The ruling on the motion thus "merges" with the prior ruling of the judgment so as to constitute a single judgment.

19

*Banister*, 140 S Ct. at 1703. And on appeal, the court reviews that "one judgment" and "addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision." *Id*.

In contrast to Rule 59(e), Rule 60(b) authorizes a court to "relieve a party . . . from a final judgment" long after the judgment is final. But a party can obtain such relief based on only the six grounds identified. Specifically, "[u]nder Rule 60(b)(1), a party may seek relief based on 'mistake, inadvertence, surprise, or excusable neglect.'" *Kemp v. United States*, 596 U.S. 528, 533 (2022). And "Rules 60(b)(2) through (b)(5) supply other grounds for reopening a judgment." *Id*. "Finally, Rule 60(b)(6) provides a catchall for 'any other reason that justifies relief.'" *Id*. "This last option is available only when Rules 60(b)(1) through (b)(5) are inapplicable," and the Supreme Court has held that it requires a showing of "'*extraordinary circumstances*.'" *Id*. (emphasis added) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)). Thus, to obtain relief from a final judgment under Rule 60(b), one of the six grounds enumerated must be satisfied. And if a plaintiff seeks to reopen a case under Rule 60(b) in order to file an amended complaint, she must satisfy one of the Rule 60(b) grounds *before* a court may consider her motion to amend. The motion to amend will then be analyzed under the distinct standard of Rule 15(a) "for prejudice, bad faith, or futility." *Laber*, 438 F.3d at 427.

Thus, while review of a Rule 59(e) ruling merges with review of the underlying judgment, "an appeal from the denial of a Rule 60(b) motion does not preserve for appellate review the underlying judgment." 12 *Moore's Federal Practice*, *supra*, § 60.03. Because a Rule 60(b) motion does not merge into the judgment but grants relief from it, the time for

20

filing is longer. Yet, because the greater time for filing implicates the policy favoring finality, the grounds for relief are narrower, as established by the text of the Rule.

At bottom, the law in our circuit remains that a motion to amend a complaint filed after a final judgment has been entered cannot be considered until the judgment has been vacated — "the district court may not grant the post-judgment motion [to amend the complaint] unless the judgment is vacated pursuant to Rule 59(e) or [Rule] 60(b)." *Laber*, 438 F.3d at 427. And after satisfying the standard for vacating the judgment under the applicable rule — whether it be Rule 59(e) or Rule 60(b) — the court may consider the motion to amend under the established standard for doing so under Rule 15(a). When the motion to vacate the judgment is made under Rule 59(e), the broad standard for allowing a court to grant the motion allows the court simply to turn to the standard applicable to the motion to amend. *See Laber*, 438 F.3d at 427–28. But when the motion to vacate is filed under Rule 60(b), the more restrictive standard for granting that motion must be satisfied before consideration can be given to the motion to amend.

We thus reject Daulatzai's argument that the *Laber* decision's collapsing of the standards under Rule 59(e) and Rule 15(a) should also apply when the motion seeks relief from the judgment under Rule 60(b).

In considering Daulatzai's 60(b) motion, the district court specifically observed that she had not satisfied the requirements of Rule 60(b). But it denied her motion only after also reviewing Daulatzai's motion to amend, deferring to the *Katyle* dictum. It then explained that under the Rule 15(a) standard, it was denying Daulatzai leave to file the proposed Third Amended Complaint based on findings of bad faith, prejudice, and futility.

21

As to the district court's ruling that Daulatzai failed to establish any of the grounds for relief in Rule 60(b), we cannot conclude that the court abused its discretion. It did not act "in an arbitrary or irrational manner, where [it] . . . completely failed to consider the right factors, or where [it] relied on faulty legal or factual premises." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022). And the finding that Daulatzai failed to satisfy the requirements of Rule 60(b) should therefore have ended the matter.

But even if we were to review the district court's specific ruling denying Daulatzai leave to amend under the standard applicable to a Rule 15(a) motion, we would not find any abuse of discretion with that ruling either. The court relied on three independent reasons in support of its order, finding (1) that Daulatzai's "repeated amendments ha[d] been made in bad faith," (2) that her "repeated failure to cure defects in her pleadings ha[d] been prejudicial to Defendants," and (3) that, in any event, the filing of her Third Amended Complaint would be futile as it would be subject to dismissal under Rule 12(b)(6) for failure to state a plausible claim. *Daulatzai*, 606 F. Supp. 3d at 279.

The court's bad faith finding was based on Daulatzai's late filings, absence of filings, and changes of position. She commenced her action almost three years after the incident of which she complained and alleged that she had been wrongfully removed from the Southwest flight "based upon a mistaken belief that she was highly allergic to dogs." After the State of Maryland and Southwest filed motions to dismiss, Daulatzai, with the assistance of new counsel, filed an amended complaint in February 2021, adding several claims and alleging that her removal from the flight had actually been racially motivated.

22

After Maryland and Southwest removed the case to federal court and again filed motions to dismiss, Daulatzai filed a Second Amended Complaint in July 2021. In seeking leave to file the Second Amended Complaint, she stated that "while the First Amended Complaint [had] . . . clarified the nature of [her] claims," it had "only included a bare bones recitation of the factual allegations giving rise to [her] additional claims," making the Second Amended Complaint "necessary in order to set forth a better statement of those claims." That same month, Maryland and Southwest, for the third time, filed motions to dismiss, and Daulatzai failed to file any response in opposition. The district court nonetheless considered each of her claims and granted the unopposed motions to dismiss.

As to the finding that Daulatzai's pleading practice had been prejudicial to the defendants, the district court found that allowing Daulatzai to file a fourth complaint would cause significant prejudice to Maryland and Southwest, pointing to their representation that they had already spent substantially more than $100,000 in litigation costs in responding to Daulatzai's three earlier complaints. The court further found that Daulatzai's "repeated shifting of [her] allegations" amounted to "disingenuous" "gamesmanship" that separately warranted denying her permission to file a fourth iteration of her complaint, noting inconsistencies in her factual allegations and her continued inclusion of clearly time-barred claims. *Daulatzai*, 606 F. Supp. 3d at 265.

In these circumstances, we would conclude also that the district court did not abuse its discretion in denying Daulatzai leave to file her proposed Third Amended Complaint. *See MedCom Carolinas*, 42 F.4th at 200 (concluding that because "the district court's bad-faith finding was within the bounds of reasonable disagreement," the court did not abuse

23

its discretion in denying leave to amend on that basis); *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (noting that the plaintiffs "had already set forth four iterations of their complaint" and concluding "that the district court did not abuse its discretion in ruling that [their] many opportunities to present their claim warranted denial of the motion to amend").

For the reasons given, we affirm the district court's order denying Daulatzai's Rule 60(b) motion.

\*       \*       \*

The judgments of the district court are accordingly

AFFIRMED.